2016-1104(L); -1105

# In The
# United States Court of Appeals
# For The Federal Circuit

## NOBELBIZ, INC.,

*Plaintiff-Appellee,*

v.

## GLOBAL CONNECT, L.L.C.; T C N, INC.,

*Defendants-Appellants.*

————————————

ON APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
CASE NOS. 6:12-CV-00244-RWS, 6:12-CV-00247-RWS,
6:13-CV-00804-MHS, AND 6:13-CV-00805-MHS
JUDGE MICHAEL H. SCHNEIDER, JUDGE ROBERT W. SCHROEDER, III

————————————

## CORRECTED PETITION FOR REHEARING EN BANC

————————————

Ralph A. Dengler
Gianna E. Cricco-Lizza
VENABLE LLP
1270 Avenue of the
Americas
New York, NY 10020
(212) 503-0655

Megan S. Woodworth
VENABLE LLP
600 Massachusetts Ave., NW
Washington, DC 20001
(202) 344-4507

William A. Hector
VENABLE LLP
505 Montgomery Street
Suite 1400
San Francisco, CA 94111
(415) 653-3750

*Counsel for Appellee*          *Counsel for Appellee*          *Counsel for Appellee*

# <u>CERTIFICATE OF INTEREST</u>

Counsel for the Appellee NobelBiz, Inc. certifies the following:

1.     The full name of every party represented by the undersigned is NobelBiz, Inc.

2.     The name of the real party in interest represented by me is NobelBiz, Inc.

3.     All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party represented by me are Nobel Limited Liability Company.

4.     The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the District Court or agency or are expected to appear in this court are:

VENABLE LLP: Ralph A. Dengler; Megan S. Woodworth; Andrew P. MacArthur; Gianna E. Cricco-Lizza; William A. Hector

CAPSHAW DERIEUX, LLP: Elizabeth L. DeRieux; Daymon J. Rambin; Sidney Calvin Capshaw, III

GIBBONS P.C.: Charles H. Chevalier


Dated: September 1, 2017                    */s/Ralph A. Dengler*
                                            Ralph A. Dengler

i

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTEREST ............................................................... i

TABLE OF AUTHORITIES ................................................................. iii

STATEMENT OF COUNSEL ................................................................1

INTRODUCTION ...........................................................................2

    I.    En banc review is necessary to determine when, if ever, a plain and ordinary meaning construction resolves a purported *O2 Micro* dispute. .....................................................3

        A.    After *O2 Micro,* this Court and district courts are deeply divided. .............................................................3

        B.    The en banc court must clarify that a plain and ordinary meaning claim construction is not dead. ...........................5

    II.    En banc review is required to confirm that claim scope may only be narrowed upon a showing of lexicography or prosecution disclaimer. ...........................................................7

        A.    The Asserted Patents are directed to creating a call. ...........7

        B.    The majority redefines three claim terms on appeal. ...........8

    III.    En banc review is needed to confirm that a jury should determine if evidence satisfies a claim's plain and ordinary meaning for infringement. .................................................14

CONCLUSION ............................................................................15

ADDENDUM

CERTIFICATE OF SERVICE

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*,
   694 F.3d 1312 (Fed. Cir. 2012) .......................................................3, 7

*Acumed LLC v. Stryker Corp.*,
   483 F.3d 800 (Fed. Cir. 2007) .........................................................10

*Apple v. Samsung Elecs. Co., Ltd.*,
   839 F.3d 1034 (Fed. Cir. 2016) (en banc) .........................1, 10, 14, 15

*Cave Consulting Grp., Inc. v. Truven Health Analytics, Inc.*,
   2017 U.S. Dist. LEXIS 62821 (N.D. Cal. Apr. 25, 2017)...................4

*CytoLogix Corp. v. Ventana Med. Sys.*,
   424 F.3d 1168 (Fed. Cir. 2005) ........................................................15

*Eon Corp. IP Holdings LLC v. Silver Spring Networks, Inc.*,
   815 F.3d 1314 (Fed. Cir. 2016) .................................................*passim*

*Every Penny Counts, Inc. v. Am. Express Co.*,
   563 F.3d 1378 (Fed. Cir. 2009) ..........................................................4

*Finjan, Inc. v. Symantec Corp.*,
   2017 U.S. Dist. LEXIS 19526 (N.D. Cal. Feb. 10, 2017) ..................4

*Frans Nooren Afdichtingssystemen B.V. v. Stopaq Amcorr Inc.*,
   744 F.3d 715 (Fed. Cir. 2014) ..........................................................13

*InfoGation Corp. v. ZTE Corp.*,
   2017 U.S. Dist. LEXIS 69252 (S.D. Cal. May 5, 2017) .....................5

*InterDigital Commc'ns., LLC v. ITC*,
   690 F.3d 1318 (Fed. Cir. 2012) ........................................................10

*Julius Zorn, Inc. v. Medi Mfg.*,
   2017 U.S. Dist. LEXIS 35826 (S.D. Cal. Mar. 13, 2017) ..................5

*Konami Gaming, Inc. v. Marks Studios, Ltd. Liab. Co.*,
   2017 U.S. Dist. LEXIS 116669 (D. Nev. Jul. 25, 2017) .....................4

*Lazare Kaplan Int'l, Inc. v. Photoscribe Techs., Inc.*,
    628 F.3d 1359 (Fed. Cir. 2010) ...................................................1, 3, 7

*O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*,
    521 F.3d 1351 (Fed. Cir. 2008) .................................................*passim*

*Oatey Co. v. IPS Corp.*,
    514 F.3d 1271 (Fed. Cir. 2008) ...........................................................11

*Oxford Immunotec Ltd. v. Qiagen, Inc.*,
    2017 U.S. Dist. LEXIS 91434 (D. Mass. Jun. 14, 2017) .....................4

*Phillips v. AWH Corp.*,
    415 F.3d 1303 (Fed. Cir. 2005) (en banc) ....................................10, 12

*Reeves v. Sanderson Plumbing Prods., Inc.*,
    530 U.S. 133 (2000)............................................................................14

*Retractable Techs., Inc. v. Becton, Dickinson & Co.*,
    653 F.3d 1296 (Fed. Cir. 2011) .............................................................9

*Retractable Techs. v. Becton, Dickinson & Co.*,
    659 F.3d 1369 (Fed. Cir. 2011) .............................................................9

*Riddell, Inc. v. Kranos Corp.*,
    2017 U.S. Dist. LEXIS 79242 (N.D. Ill. May 24, 2017).....................4

*Summit 6, LLC v. Samsung Elecs. Co.*,
    802 F.3d 1283 (Fed. Cir. 2015) ...................................................1, 3, 5

*Thorner v. Sony Comput. Entm't Am. LLC*,
    669 F.3d 1362 (Fed. Cir. 2012) .................................................1, 9, 11

*Trustees of Columbia Univ. v. Symantec Corp.*,
    811 F.3d 1359 (Fed. Cir. 2016) .............................................................9

*Unwired Planet, LLC v. Apple Inc.*,
    829 F.3d 1353 (Fed. Cir. 2016) .......................................................1, 9

*UUSI, LLC v. United States*,
    131 Fed. Cl. 244 (2017) .......................................................................5

iv

**Other Authorities**

Jeanne C. Fromer and Mark A. Lemley, *The Audience In Intellectual Property Infringement*, 112 MICH. L. REV. 1251 (2014).....................................6

## STATEMENT OF COUNSEL – FEDERAL CIRCUIT RULE 35(B)(2)

Based on my professional judgment, I believe the panel decision is contrary to the following precedent of this Court: *Summit 6, LLC v. Samsung Elecs. Co.*, 802 F.3d 1283 (Fed. Cir. 2015); *Lazare Kaplan Int'l, Inc. v. Photoscribe Techs., Inc.*, 628 F.3d 1359 (Fed. Cir. 2010); *Unwired Planet, LLC v. Apple Inc.*, 829 F.3d 1353 (Fed. Cir. 2016); *Thorner v. Sony Comput. Entm't Am. LLC*, 669 F.3d 1362 (Fed. Cir. 2012); *Apple v. Samsung Elecs. Co., Ltd.*, 839 F.3d 1034 (Fed. Cir. 2016) (en banc).

Further, based on my professional judgment, I believe this appeal requires an answer to the following precedent-setting questions of exceptional importance:

1.      May a district court ever assign a "plain and ordinary meaning" construction? Or is an express construction required whenever a litigant asserts an *O2 Micro* "dispute," as dictated by *NobelBiz* and *Eon*?

2.      May the Federal Circuit narrow claim scope without finding lexicography or prosecution disclaimer, by parsing the intrinsic record and relying on "extra-record extrinsic evidence," as occurred in *NobelBiz*?

3.      May a district court refer the question of infringement to a jury when claim terms are assigned their plain and ordinary meaning?

Dated: September 1, 2017                */s/ Ralph A. Dengler*
                                        Ralph A. Dengler

## INTRODUCTION

This case presents fundamental issues of claim construction crucial to the orderly and efficient disposition of patent litigation. The 2-1 majority in *NobelBiz* held that a district court has an absolute duty to provide an express construction whenever a litigant argues a "dispute" under *O2 Micro*.[1] But precedent holds that a "plain and ordinary meaning" construction resolves such a dispute when the terms are readily understood by a jury or the dispute relates to a factual question of infringement. Both were true here. The intra-circuit divide has not only affected NobelBiz and other litigants, but also created uncertainty for district courts in resolving *O2 Micro* disputes. Without guidance, parties and district courts will expend significant resources on litigation and trial, while reversible error looms unless all "disputed" terms are construed.

In addition to requiring express constructions, the majority narrowed three claim terms based on parsed statements from the intrinsic record. This violates the Court's precedent requiring lexicography or disclaimer before narrowing the meaning of claim terms. Lastly, this decision undermines a jury's fact finding role. Under *NobelBiz*, juries have no latitude to determine if evidence satisfies a term's plain and ordinary meaning for infringement.

---

[1] While the opinion is designated as "non-precedential," *NobelBiz* involves critical aspects of patent law. These issues have significant ramifications beyond this decision, requiring en banc resolution.

I.    **En banc review is necessary to determine when, if ever, a plain and ordinary meaning construction resolves a purported *O2 Micro* dispute.**

A.    **After *O2 Micro,* this Court and district courts are deeply divided.**

Under one line of cases (respectfully, the proper view), a plain and ordinary meaning construction resolves an *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351 (Fed. Cir. 2008) dispute in two instances.  First, the claim terms can be readily understood by a jury.  *Summit 6, LLC v. Samsung Elecs. Co.*, 802 F.3d 1283, 1290–91 (Fed. Cir. 2015) ("'Being provided to' is comprised of commonly used terms" so plain and ordinary meaning resolved *O2 Micro* dispute); *see also NobelBiz*, Op., at 1 (Newman, J., dissenting) ("outbound call" and "replacement telephone number" "readily understood by judge and jury"); *Eon Corp. IP Holdings LLC v. Silver Spring Networks, Inc.*, 815 F.3d 1314, 1324 (Fed. Cir. 2016) (Bryson, J., dissenting) ("'portable' and 'mobile' were used in their ordinary sense").

Second, the dispute is factual, related to determining infringement.  *Lazare Kaplan Int'l, Inc. v. Photoscribe Techs., Inc.*, 628 F.3d 1359, 1376 (Fed. Cir. 2010) ("parties' dispute concerns factual questions relating to the test for infringement and not the legal inquiry of the appropriate scope"); *ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*, 694 F.3d 1312, 1326 (Fed. Cir. 2012) (appropriate for jury to determine if accused system satisfied the plain meaning).

In direct conflict, other panels have held over dissent that a "plain and ordinary meaning" claim construction does not resolve an *O2 Micro* dispute because it

3

purportedly leaves claim scope unanswered. *See, e.g.*, *Eon*, 815 F.3d at 1319 ("plain and ordinary meaning . . . left this question of claim scope unanswered . . . . This was legal error."); Op., at 5-6, n.1 (quoting *O2 Micro* that "plain and ordinary meaning . . . does not resolve the parties' dispute"); *see also Every Penny Counts, Inc. v. Am. Express Co.*, 563 F.3d 1378, 1383 (Fed. Cir. 2009).

These mixed messages leave district courts uncertain whether a plain and ordinary meaning construction resolves an *O2 Micro* dispute, such that a jury can decide infringement, or if an express construction is required. Some state the former is proper. *See Konami Gaming, Inc. v. Marks Studios, Ltd. Liab. Co.*, 2017 U.S. Dist. LEXIS 116669, at *20, 24, 30, 32 (D. Nev. Jul. 25, 2017) (terms "familiar" to jury so plain meaning appropriate and jury could decide infringement); *Oxford Immunotec Ltd. v. Qiagen, Inc.*, 2017 U.S. Dist. LEXIS 91434, at *10, 13, 20 (D. Mass. Jun. 14, 2017) (terms relating to diagnosing tuberculosis "clear" so plain meaning proper); *Riddell, Inc. v. Kranos Corp.*, 2017 U.S. Dist. LEXIS 79242, at *18–19, 21–22 (N.D. Ill. May 24, 2017) (terms "readily apparent" so plain meaning sufficient); *Cave Consulting Grp., Inc. v. Truven Health Analytics, Inc.*, 2017 U.S. Dist. LEXIS 62821, at *12 (N.D. Cal. Apr. 25, 2017) (can "explain to the jury why the accused software does or does not satisfy the plain and ordinary language").

Other district courts have construed even simple words because a litigant asserted an *O2 Micro* "dispute." *See, e.g.*, *Finjan, Inc. v. Symantec Corp.*, 2017 U.S.

Dist. LEXIS 19526, at *54 (N.D. Cal. Feb. 10, 2017) (construing "web client" to "avoid any claims of an *O2 Micro* violation at trial"); *InfoGation Corp. v. ZTE Corp.*, 2017 U.S. Dist. LEXIS 69252, at *15–27 (S.D. Cal. May 5, 2017) (construing "non-proprietary" and "natural language" because disputed); *UUSI, LLC v. United States*, 131 Fed. Cl. 244, 268 (2017) ("until" construed because disputed); *Julius Zorn, Inc. v. Medi Mfg.*, 2017 U.S. Dist. LEXIS 35826, at *7–8, 55–57 (S.D. Cal. Mar. 13, 2017) (construing "proximal and distal edges" because disputed).

Thus, plain and ordinary meaning jurisprudence is unsettled as to *O2 Micro*: Federal Circuit precedent conflicts; *Eon* and *NobelBiz* were split panel opinions; and district courts are uncertain if they must construe every disputed term.

### B.    The en banc court must clarify that a plain and ordinary meaning claim construction is not dead.

A district court should not be obliged to construe terms that are readily understood by a jury, thereby engaging in resource-intensive claim construction any time a party cries "dispute." *Summit 6*, 802 F.3d at 1291. NobelBiz's claim terms ("outbound call" and "replacement telephone number") could not be simpler:

> These terms are not scientific or technologic . . . . They are words that are readily understood by judge and jury, . . . [used] according to their plain and ordinary meaning.

Op., at 1 (Newman, J., dissenting). Indeed, despite Defendants' manufactured dispute, their own witnesses readily understood the terms. Appx8982, 47:12–48:5 (Global Connect controls "outbound call"); Appx9082, 11:16–19 (TCN describing

its "outbound call"); Appx8676 (TCN: "How does the replacement happen"). The majority did not consider this record evidence. If the plain and ordinary meaning is improper for the readily understood terms that Defendants' employees used in conducting business, then plain and ordinary meaning is dead.

The majority—without distinguishing NobelBiz's precedent—held that each claim term required an express construction. It then reformulated a three-word term ("replacement telephone number") and a two-word term ("outbound call") into complicated, multi-layered reconstructions (e.g., "outbound call" is not only a "call placed by an originator to a target," but also has to occur in a system that "acts on an already extant call"). Op., at 6–9. Such complicated constructions cannot represent the "plain and ordinary meaning" and are unfaithful to the intrinsic record.

A district court also should not be compelled to decide factual disputes about infringement at claim construction. *NobelBiz*, and *Eon*, improperly "convert[] such factual aspects into legal issues of claim construction," whenever a litigant asserts an *O2 Micro* dispute. Op., at 4 (Newman, J., dissenting); *Eon*, 815 F.3d at 1329–31 (Bryson, J., dissenting).[2] The dispute in *NobelBiz* was not related to claim scope, but rather whether Defendants' systems infringed the claims:

The district court appropriately submitted to the jury the factual

---

[2] "The Federal Circuit has increasingly . . . [held] that any dispute over the meaning of a construed claim term is a dispute of claim construction, not infringement." Jeanne C. Fromer and Mark A. Lemley, *The Audience In Intellectual Property Infringement*, 112 MICH. L. REV. 1251, 1266 n.80 (2014).

infringement question of whether the accused systems, in which there is no capture of a pre-dialed call, are within the literal or equivalent scope [of the claims].

Op., at 2–3 (Newman, J., dissenting); Dkt. No. 43, 40–47 (marshaling record). A jury should resolve such factual disputes, not a court. *Lazare*, 628 F.3d at 1376; *ActiveVideo*, 694 F.3d at 1326; Dkt. No. 43, at 14–15.

This intra-circuit conflict will continue to create confusion and waste. The *Eon* panel overturned a $13 million verdict years after the district court assigned plain and ordinary meaning claim constructions. *Eon*, 815 F.3d at 1316. Likewise, the *NobelBiz* panel overturned a $2 million jury verdict after the parties litigated under such constructions for several years—only to be told on appeal that a plain and ordinary meaning construction is not proper. District courts will be burdened too: without en banc resolution, parties will manufacture *O2 Micro* disputes, forcing district courts to construe all terms. And if not all construed, they will face requests for interlocutory appeals in view of *Eon* and *NobelBiz*.

## II. En banc review is required to confirm that claim scope may only be narrowed upon a showing of lexicography or prosecution disclaimer.

### A. The Asserted Patents are directed to creating a call.

NobelBiz's U.S. Patent No. 8,135,122 ("the '122 Patent") recites selecting one caller ID from a database, inserting that caller ID (which matches the area code of a call target) into the originator of the call, and then transmitting that caller ID.

1. A system for processing an **outbound call** from a call originator to a

7

call target, the system comprising:

a database storing a plurality of outgoing telephone numbers;

an information processor controlled by the call originator and configured to process a trigger comprising a telephone number of the call target;

access the database and select a **replacement telephone number** from the plurality of outgoing telephone numbers based on at least an area code of the telephone number of the call target;

**modify caller identification data** of the call originator to the selected replacement telephone number, the selected replacement telephone number having at least an area code the same as an area code of the telephone number of the call target; and

transmit the modified caller identification data of the call originator to the call target.

Appx390, 5:4–21 (emphasis added).  U.S. Patent No. 8,565,399 ("the '399 Patent"), sharing a common specification with the '122 Patent, also has claims directed to the call originator with one disputed term: "outbound call."  Appx400, 5:5–23 ("1. A system for handling an **outbound call** from a call originator to a call target, the system comprising: . . . . d) transmit the caller identification data to the call target in connection with the **outbound call**.") (emphasis added).

### B.    The majority redefines three claim terms on appeal.

The majority adopted narrow, wordy constructions for plain English terms merely because "[t]he intrinsic evidence **better supports** the Defendants' proposed construction . . . ."  Op., at 9 (emphasis added).  This admission concedes that the

8

intrinsic evidence also does support NobelBiz's proposed construction. Yet, the majority selected more narrow constructions without satisfying the high burden that NobelBiz: 1) acted as its own lexicographer; or 2) disavowed claim scope in the specification or during prosecution. Op., at 6–9; *Unwired Planet, LLC v. Apple Inc.*, 829 F.3d 1353, 1358 (Fed. Cir. 2016) (reversing construction that read limitations into claim where no disavowal found in specification); *Thorner v. Sony Comput. Entm't Am. LLC*, 669 F.3d 1362, 1369 (Fed. Cir. 2012) (reversing constructions because court imported limitation from specification).

Other decisions from this Court have narrowed the plain and ordinary meaning without finding lexicography or disclaimer. *Trustees of Columbia Univ. v. Symantec Corp.*, 811 F.3d 1359, 1363–66 (Fed. Cir. 2016) (narrowing term based on embodiments in the specification); *Retractable Techs., Inc. v. Becton, Dickinson & Co.*, 653 F.3d 1296, 1305 (Fed. Cir. 2011) (limiting term). *NobelBiz* exemplifies why lexicography and disclaimer are critical and this Court's discord on the issue should be resolved here. Panels should not "redefine a claim term to match [their] view of the scope of the invention as disclosed in the specification. [They] are not the lexicographers." *Retractable Techs. v. Becton, Dickinson & Co.*, 659 F.3d 1369, 1371 (Fed. Cir. 2011) (Moore, J., dissenting).

**"Outbound Call."** Claim 1 recites: "A system for processing an outbound call from a call originator to a call target . . . ." This claim expressly recites that the

"outbound call" is created and transmitted by an originator of the call. Dkt. No. 43, at 3–4, 22–23 (reciting the "information processor **controlled by the call originator** . . . transmit the modified caller identification data **of the call originator** to the call target."). However, the majority limited "outbound call" to a system in the telecommunications or carrier networks that receives and acts upon an outbound call, denoted by the majority as an "extant call." Op., at 8–9.

But **the claims (and specification) do not mention "extant call" anywhere**; rather, they expressly recite call originator multiple times. The majority abandoned this threshold claim analysis. *See Acumed LLC v. Stryker Corp.*, 483 F.3d 800, 805 (Fed. Cir. 2007) ("When construing claims, a court must begin by look[ing] to the words of the claims") (citations and quotations omitted); *Phillips v. AWH Corp.*, 415 F.3d 1303, 1314 (Fed. Cir. 2005) (en banc) ("[T]he claims themselves provide substantial guidance as to the meaning of particular claim terms.") (citations omitted).[3] Indeed, the majority created its own extrinsic definition of the word "outbound," instead of construing the claim term "outbound call." Op., at 8 (no citation for purportedly "giv[ing] meaning to the word 'outbound'"). However, a panel "cannot rely on extra-record extrinsic evidence in the first instance . . . about

---

[3] The carrier network embodiment appears only in dependent claim 2. Dkt. No. 43, at 23. The majority's reading that limitation into claim 1 violates claim differentiation. *See InterDigital Commc'ns., LLC v. ITC*, 690 F.3d 1318, 1324 (Fed. Cir. 2012).

the plain meaning of a claim term[.]" *Apple Inc. v. Samsung Elecs. Co.*, 839 F.3d 1034, 1039 (Fed. Cir. 2016) (en banc).

The majority similarly disregarded the specification's disclosure that a call originator is a "call center, person or organization"—it is not limited to a carrier network. Dkt. No. 43, at 3–5, 22. Thus, call originator expressly includes a "call center," which is where Defendants' systems operate. *Id.*, at 2–3; *Thorner*, 669 F.3d at 1367 ("[P]atentee . . . obtain[s] full scope of its plain and ordinary meaning unless the patentee explicitly redefines the term or disavows its full scope.").

The specification also states that the "system and method may operate in Originator's 100 PBX . . . or may be attached to or embedded within Originator's 100 communication device." Appx388, 2:58–62; Dkt. No. 43, at 3–5, 22–24; Op., at 3 (Newman, J., dissenting) ("claimed system may alternatively operate in an origination device, before the call is sent"). This embodiment has to be "embedded [or incorporated] within Originator's" device;[4] thus, it cannot exist in the network.

Excluding this express embodiment, the majority required NobelBiz to disprove the technical functionality under its construction. Op., at 9 ("NobelBiz fails to show why a PBX or communication device cannot operate on an extant call"). But this is legally infirm. *See Oatey Co. v. IPS Corp.*, 514 F.3d 1271, 1276 (Fed.

---

[4] The parties agreed that "embedded" means "[i]ncorporated within." Appx58.

Cir. 2008) (court "normally do[es] not interpret claim terms in a way that excludes embodiments disclosed in the specification"); *Phillips*, 415 F.3d at 1323 (warning against confining claims to certain embodiments). Factually, because Defendants as Call Originators use a PBX to launch calls—found by the jury—the majority's extrinsic understanding is unsupportable. Dkt. No. 43, at 28–29, 31 (Defendants each operate a PBX to launch calls); *Apple*, 839 F.3d at 1039; *see also* Appx. 8941, 69:14–72:4 (discussing that a PBX operates in a call originator).

**"Replacement Telephone Number**." Claim 1 recites: "replacement telephone number" and "modify caller identification data." The majority narrowed the first term to require that a second telephone number must substitute for a first or original telephone number, while the second term was construed as "change caller identification data." Op., at 6–7.

But nothing in the claims supports that a first telephone number must be inserted into the caller identification data and then replaced with another telephone number. Rather, the independent claim recites **only one telephone number**—the single number selected from the database. Dkt No. 43, at 4, 19–22. It states: "select a replacement telephone number from the plurality of outgoing telephone numbers based on at least an area code of the telephone number of the call target" and then "modify caller identification data of the call originator **to the selected replacement telephone number**." *Id.* at 4.

12

The claim only requires that, after the replacement telephone number (one telephone number) is selected based on a match, it is inserted into the caller ID data. *Id.* at 19–20. In other words, inserting the selected caller ID number satisfies the plain and ordinary claim element of "modify[ing] caller identification data . . . to the selected replacement number."

The specification reinforces this conclusion; nowhere does it require a first telephone number to be inserted into the caller identification data and then substituted for by a second telephone number. Nor does the prosecution history support the majority's strained construction. Op., at 7. First, the amendment discussed in the opinion was made by the Examiner without comment, and this Court has repeatedly warned against speculating as to the reasons for such amendment. *See Frans Nooren Afdichtingssystemen B.V. v. Stopaq Amcorr Inc.*, 744 F.3d 715, 719–20 (Fed. Cir. 2014) (rejecting exclusion because "Applicants never said anything that states or implies such an exclusion" and "examiner's language" was unclear). Second, NobelBiz made no statement narrowing "replacement telephone number" or "modify . . ." to require a first telephone number and a second telephone number. *See id.*; Dkt No. 43, at 21–22.

Instead of adhering to the intrinsic record, the majority again created its own extrinsic definition of the word "replacement" (not the claim term "replacement telephone number") to reach its constructions. Op., at 6 (with no citation, the

13

majority states: "The word 'replacement' indicates the replacement telephone number must actually *replace* something."); *Apple*, 839 F.3d at 1039. To the contrary, a "replacement telephone number" can still replace "something" without having a first telephone number already in the call identification data. That is, the caller ID selected from the database replaces what otherwise would have been used by the call originator as a number.

En banc review is necessary to confirm that panels may narrow claim scope only after finding lexicography or disclaimer, and not by relying on "extra-record extrinsic evidence" or parsing the intrinsic record.

## III.   En banc review is needed to confirm that a jury should determine if evidence satisfies a claim's plain and ordinary meaning for infringement.

The majority's decision undermines the fact-finding role of the jury. Over a six-day trial in *NobelBiz*, there were "witnesses . . . pointing out the similarities and differences between the patented system and the accused systems." Op., at 4 (Newman, J., dissenting). "[T]he district court, in its measured judgment, refer[red] the question of infringement to the jury." *Id.* at 6 (Newman, J., dissenting). The jury resolved the parties' factual disputes and determined infringement. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150–51 (2000) (juries, not judges, weigh evidence).

Yet, the majority reversed without providing any deference to the jury's finding of facts as to infringement. Op., at 6 (Newman, J., dissenting) ("it is not the

appellate role to require that the trial be repeated."). *NobelBiz* gives a jury no latitude to consider whether evidence falls within a claim's plain and ordinary meaning; now, anytime a defendant insists on a construction (i.e., invokes an *O2 Micro* "dispute"), the jury cannot determine whether the accused system fits within that meaning. *See Apple*, 839 F.3d at 1039 (Federal Circuit "require[s] appropriate deference be applied to the review of fact findings.").

Experts also cannot argue why their clients' evidence does or does not support a finding. In *NobelBiz*, Defendants converted expert testimony they elicited into an excuse for reversal (Op., at 5), despite never taking issue with this purportedly improper testimony. Dkt. No. 43, at 15, 22; *see also CytoLogix Corp. v. Ventana Med. Sys.*, 424 F.3d 1168, 1173 (Fed. Cir. 2005) ("no ground for reversal . . . [if] no objection to the expert testimony as to claim construction."). And courts are required, whenever litigants demand constructions, to construe all terms—even simple ones. This opinion upsets the traditional roles of all trial participants and creates needless work for district courts.

## CONCLUSION

This Court's intra-circuit conflict on the viability of plain and ordinary meaning, mixed messages on narrowing claim scope, and encroachment into the jury's fact finding role are issues of exceptional importance. En banc review is necessary to provide clear instruction on these issues to lower courts and litigants.

15

Respectfully submitted,


*/s/Ralph A. Dengler*

Ralph A. Dengler
Gianna E. Cricco-Lizza
Venable LLP
1270 Avenue of the Americas
New York, NY 10020
212-503-0655 (Telephone)
212-307-5598 (Facsimile)
RADengler@Venable.com
GECricco-Lizza@venable.com

Megan S. Woodworth
Venable LLP
600 Massachusetts Ave., NW
Washington, DC 20001
202-344-4507 (Telephone)
202-344-8300 (Facsimile)
MSWoodworth@venable.com

William A. Hector
Venable LLP
505 Montgomery Street
Suite 1400
San Francisco, CA 94111
415-653-3750 (Telephone)
415-653-3755 (Facsimile)
WAHector@Venable.com

*Attorneys for Plaintiff-Appellee,*
*NobelBiz, Inc.*

# ADDENDUM

NOTE: This disposition is nonprecedential.

# United States Court of Appeals
# for the Federal Circuit

---

**NOBELBIZ, INC.**
*Plaintiff-Appellee*

**v.**

**GLOBAL CONNECT, L.L.C., T C N, INC.,**
*Defendants-Appellants*

---

2016-1104, 2016-1105

---

Appeals from the United States District Court for the Eastern District of Texas in Nos. 6:12-cv-00244-RWS, 6:12-cv-00247-RWS, 6:13-cv-00804-MHS, and 6:13-cv-00805-MHS, Judge Robert Schroeder, III, Judge Michael H. Schneider.

---

Decided: July 19, 2017

---

RALPH A. DENGLER, Venable LLP, New York, NY, argued for plaintiff-appellee. Also represented by GIANNA CRICCO-LIZZA; MEGAN S. WOODWORTH, Washington, DC; WILLIAM A. HECTOR, San Francisco, CA.

CLINTON EARL DUKE, Durham Jones & Pinegar, Salt Lake City, UT, argued for defendants-appellants. Also represented by LYNDON BRADSHAW.

———————————

Before NEWMAN, DYK, and HUGHES, *Circuit Judges.*

Opinion for the court filed by *Circuit Judge* HUGHES.

Dissenting opinion filed by *Circuit Judge* NEWMAN.

HUGHES, *Circuit Judge.*

Global Connect, L.L.C. and T C N, Inc. (collectively, the Defendants) appeal from a jury verdict finding they infringed U.S. Patent Nos. 8,135,122 and 8,565,399. Because the district court erred in its claim construction, we reverse and remand.

I

NobelBiz sued the Defendants in the Eastern District of Texas alleging infringement of the '122 and '399 patents. Both patents are titled "System and method for modifying communication information (MCI)" and have identical specifications. J.A. 382, 391. The patents relate to "a method for processing a communication between a first party and a second party." '122 patent col. 1 ll. 52–53. When a call originator contacts a call target, the system modifies the caller ID data "to provide a callback number or other contact information . . . that may be closer to or local to the Target." '122 patent col. 1 ll. 44–46. The first claim of each patent is reproduced below with the disputed claim language emphasized.

Claim 1 of the '122 patent reads:

1. A system for processing an outbound call from a call originator to a call target, the system comprising:

a database storing a plurality of outgoing telephone numbers;

an information processor controlled by the call originator and configured to process a trigger comprising a telephone number of the call target;

access the database and select a replacement telephone number from the plurality of outgoing telephone numbers based on at least an area code of the telephone number of the call target;

*modify caller identification data of the call originator to the selected replacement telephone number*, the selected replacement telephone number having at least an area code the same as an area code of the telephone number of the call target; and

transmit the modified caller information data of the call originator to the call target.

'122 patent col. 5 ll. 4–21.

Claim 1 of the '399 patent reads:

1. A system for handling an outbound call from a call originator to a call target, the system comprising:

a database storing a plurality of outgoing telephone numbers, each outgoing telephone number having one of two or more area codes; and

an information processor controlled by the call originator and configured to:

a) process a trigger comprising at least an area code of a telephone number of the call target;

b) select from the database a telephone number from the plurality of outgoing telephone numbers where the selected telephone number has at least an area code the same as the area code of the telephone number of the call target;

    c) set caller identification data of the *outbound call* to the selected telephone number; and

    d) transmit the caller identification data to the call target in connection with the *outbound call*.

'399 patent col. 5 ll. 5–23.

The parties asked the district court to construe several claim terms, including "modify caller identification data of the call originator to the selected replacement telephone number," "replacement telephone number," and "outbound call." For "replacement telephone number," NobelBiz requested the construction: "A number other than the call originator system telephone number. J.A. 10. The Defendants requested the construction: "A telephone number different from the original telephone number in the caller ID data that is substituted in place of the original telephone number in the caller ID data." *Id.* For the "modify caller identification data" term, NobelBiz argued that no construction was needed, while the Defendants requested the construction: "Chang[ing] the caller ID data by replacing the original telephone number in the caller ID data with the selected 'replacement telephone number.'" J.A. 14. For "outbound call," NobelBiz argued that no construction was needed, while the Defendants requested the construction: "A call after it has been originated and sent." J.A. 68.

After briefing and oral argument, the district court found that all three terms should be given their plain and ordinary meanings. During the jury trial, experts on both sides testified about the meaning of these terms, consistent with their positions during claim construction.

After trial, the jury found the asserted claims infringed. The Defendants filed renewed motions for judgment as a matter of law and, in the alternative, for a new trial. The district court denied the motions, and the

Defendants appeal.  We have jurisdiction under 28 U.S.C. § 1295(a)(1).

## II

The Defendants argue that the district court erred in its claim construction by holding that "replacement telephone number," "modify caller identification data of the call originator" and "outbound call" all have their plain and ordinary meaning.  We review claim constructions based on intrinsic evidence de novo.  *Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 135 S.Ct. 831, 841 (2015).

## A

Each independent claim of the '122 patent requires "modifying caller identification data to the selected replacement telephone number."  '122 patent col. 5 ll. 15–16; *see also* col. 5 ll. 47–49 and col. 6 ll. 30–31 ("modifying caller identification data of the call originator to the selected replacement telephone number.").  During claim construction, the parties presented a clear dispute regarding the proper scope of the claims.  Nevertheless, the district court concluded that because "the term is not ambiguous and will easily be understood by a jury, plain and ordinary meaning will prevail." J.A. 13.  During trial, the parties' experts testified about the meaning of the claims, ultimately leaving claim construction issues to the jury.  NobelBiz's expert argued the claim only requires modifying caller identification data to a selected telephone number, and so no original telephone number is necessary.  J.A. 9375 at 22:6–19.  The Defendants' expert asserted that the claim requires changing caller identification data by replacing an original phone number with the replacement telephone number.  *See id.*  Allowing the experts to make arguments to the jury about claim scope was erroneous.

The district court had the responsibility to determine the scope of the asserted claims, and "[a] determination

that a claim term 'needs no construction' or has the 'plain and ordinary meaning' may be inadequate when a term has more than one 'ordinary' meaning or when reliance on a term's 'ordinary' meaning does not resolve the parties' dispute." *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1361 (Fed. Cir. 2008). In *O2 Micro*, the district court concluded that the disputed claim term had a "well-understood definition" even though "the parties dispute[d] the scope of that claim term, each party providing an argument identifying the alleged circumstances when the requirement specified by the claim term must be satisfied." *Id.* On appeal, we found that "[b]y failing to construe th[e] term, the district court left the jury free to consider these arguments." *Id.* at 1362. The same error occurred here. The district court must provide a construction because "the parties disputed not the *meaning* of the words themselves, but the *scope* that should be encompassed by th[e] claim language." *Id.* at 1361 (emphasis in original).[1]

We turn now to the proper scope of the claims based on the intrinsic record. Looking first to the claim language, the caller identification data is *modified* to the *replacement* telephone number. The word "replacement" indicates the replacement telephone number must actually *replace* something. In the context of the claim, what is being replaced is an original phone number. The word "modify" also indicates that there must have been original

---

1    Contrary to the dissent's characterization, this is not merely a factual question of infringement. In our claim construction, we do not examine the Defendants' system, but focus on the intrinsic record: the claims, the specification, and the prosecution history. The scope of patent claims will always affect infringement, but the meaning of the claim language remains a legal issue to be determined by the judge, not the jury.

caller identification data (in this context, a telephone number) that is now being *modified*. The patent specification does not discuss this claim language, and therefore we see no reason to depart from this straightforward reading of the claim.

The prosecution history further supports this interpretation of the claims. The relevant limitation, as drafted in the original application, required the information processor to: "select one of the plurality of outgoing telephone numbers having at least an area code the same as an area code of the telephone number of the call target." *See* J.A. 480–81. The Examiner narrowed the claims to instead read:

> select a *replacement telephone number* from the plurality of outgoing telephone numbers based on an at least an area code of the telephone number of the call target; *modify caller identification data of the call originator to the selected replacement telephone number*, the selected replacement telephone number having at least an area code the same as the area code of the telephone number of the target.

*See id.* The addition of the words "replacement telephone number" and "modify caller identification data" support our conclusion that the claims require the caller identification data to be modified from an original phone number to a replacement phone number. Therefore, we construe "replacement telephone number" to mean "a telephone number that substitutes for an original telephone number," and "modify caller identification data" to mean "change caller identification data."

## B

The Defendants also appeal the district court's construction of "outbound call." Each independent claim of the '399 patent requires the system, computer, or method

to "transmit the caller identification data to the call target in connection with the outbound call." '399 patent col. 5 ll. 22–23; *see also* col 5 ll. 61–62 and col. 6 ll. 42–43 ("transmitting the caller identification data to the call target in connection with the outbound call."). The district court construed "outbound call" to have its plain and ordinary meaning. Again the district court erred under *O2 Micro* by failing to construe the claim term. The parties disagree about whether the "outbound call" must be a call that is already extant. The Defendants argue that the patent describes a "catch-and-release" system: the system operates on a call that has already been originated, and then releases the call with new caller identification information to the target. We agree.

First, requiring that the call be extant gives meaning to the word "outbound" in "outbound call." Otherwise, the claims could simply require transmitting the caller identification data in connection with the call, rather than the *outbound* call. Second, the specification supports the conclusion that the system acts on an already extant call: the Abstract specifies "[a] system for handling an outbound call from a call originator to a call target," J.A. 391; the summary of the invention describes how "a communication is received from the first party" before the system acts on it, '399 patent col. 1 ll. 52–61; and Figures 1–4 show the system acting on a call that has already been originated, J.A. 393–96.

NobelBiz argues that requiring an extant call reads out embodiments disclosed in the specification:

In one aspect, the system and method of the present disclosure may operate within or may be connected to Carrier Network 130. In other aspects, the system and method may operate in Originator's 100 PBX (e.g. corporate phone system, predictive dialer, call distribution system) or may be attached to or embedded within Origina-

> tor's 100 communication device (e.g. telephone,
> VoIP phone, VoIP soft phone).

'399 patent col. 2 ll. 56–62. We are not persuaded. NobelBiz fails to show why a PBX or communication device cannot operate on an extant call. The intrinsic evidence better supports the Defendants' proposed construction, and we therefore construe "outbound call" as a "call placed by an originator to a target."

## III

Because the district court erred in its claim construction, we do not reach the remainder of the issues on appeal. Therefore, we reverse the district court's claim construction, vacate the judgment, and remand for a new trial. On remand the district court may entertain a summary judgment motion of non-infringement.

**REVERSED AND REMANDED**

COSTS

Costs to Appellants.

NOTE:  This disposition is nonprecedential.

# United States Court of Appeals
# for the Federal Circuit

_____

**NOBELBIZ, INC.,**
*Plaintiff-Appellee*

**v.**

**GLOBAL CONNECT, L.L.C., T C N, INC.,**
*Defendants-Appellants*

_____

2016-1104, 2016-1105

_____

Appeals from the United States District Court for the Eastern District of Texas in Nos. 6:12-cv-00244-RWS, 6:12-cv-00247-RWS, 6:13-cv-00804-MHS, and 6:13-cv-00805-MHS, Judge Robert Schroeder, III, Judge Michael H. Schneider.

_____

NEWMAN, *Circuit Judge,* dissenting.

The district court gave several claim terms their plain and ordinary meaning. These terms are not scientific or technologic terms and they do not have a special meaning in the subject technology. They are words that are readily understood by judge and jury, and are used in the claims according to their plain and ordinary meaning. The trivial changes made by the panel majority do not warrant the new trial that is ordered; nor does the action of

the district court in giving the overall question of infringement to the jury.  I respectfully dissent.

## A

It is not reversible error for the district court to decline to "construe" terms that have a plain and ordinary meaning as used in the patent.  See *Summit 6, LLC v. Samsung Elecs. Co.*, 802 F.3d 1283, 1291 (Fed. Cir. 2015) ("[E]ach [term] is used in common parlance and has no special meaning in the art.  Because the plain and ordinary meaning of the disputed claim language is clear, the district court did not err by declining to construe the claim term.").

The panel majority holds that the term "replacement telephone number" should be construed as "a telephone number that substitutes for an original telephone number," Maj. Op. at 7; the term "modify caller identification data" should be construed as "change caller identification data," *id.*; and the term "outbound call" in the clause "transmit the caller identification data to the call target in connection with the outbound call" should be construed as "a call placed by an originator to a target," *id.* at 9.  We are not told how these corrected definitions could have changed the result at trial.

There is no obligation for a district court to construe straightforward terms whose meaning and scope are readily understood.  *Summit 6*, 802 F.3d at 1291.  Infringement in this case is not a product of arcane claim language.  *See, e.g.*, *Lazare Kaplan Int'l, Inc. v. Photoscribe Techs., Inc.*, 628 F.3d 1359, 1376 (Fed. Cir. 2010) ("This court agrees with the Defendants that the parties' dispute concerns factual questions relating to the test for infringement and not the legal inquiry of the appropriate scope of the 'positional accuracy' limitation.").

As the district court recognized, the heart of the parties' disagreement is whether the claims are infringed by

the Defendants' system, which is not a "catch and release system" where the call is captured after origination (i.e., dialing) and the Caller ID modified before the call is released.[1] The Figures in the specification show "catch and release" capture after the call is dialed, while the specification states that the claimed system may alternatively operate in an origination device, before the call is sent. '122 Patent, col. 2, ll. 58–62 ("The system and method . . . may be attached to or embedded within Originator's [] communication device.").

The issue of infringement thus did not turn on a disputed technical meaning of any claim term, but on whether the claims are infringed by systems in which a web-dialer originates calls with modified Caller-ID data, as opposed to a catch-and-release system whereby calls are intercepted after origination and modified. Each of the claim construction arguments raised by Appellants is, at bottom, a question of whether the claims should be limited to a "catch-and-release" system. The district court appropriately submitted to the jury the factual infringement question of whether the accused systems, in which there is no capture of a pre-dialed call, are within the literal or equivalent scope of the claimed method and system.

I do not perceive reversible error in submitting the infringement question to the jury in this case. *See Union Carbide Chems. & Plastics Tech. Corp. v. Shell Oil Co.*, 425 F.3d 1366, 1377 (Fed. Cir. 2005) ("Because the claim language does not require a particular form of testing, this inquiry is not a claim construction question, which this court reviews de novo. Rather, this court reviews this

-----

[1]    *NobelBiz, Inc. v. Glob. Connect, L.L.C.*, No. 612CV244MHSLEAD, 2014 WL 4626291, at *8 (E.D. Tex. Sept. 15, 2014) (Dist. Ct. Op.).

inquiry as a question of fact."), *overruled on other grounds by Cardiac Pacemakers, Inc. v. St. Jude Med., Inc.*, 576 F.3d 1348 (Fed. Cir. 2009).

## B

The decision of this case invokes the tension between deciding factual questions of infringement and converting such factual aspects into legal issues of claim construction. *See Function Media, L.L.C. v. Google, Inc.*, 708 F.3d 1310, 1326 (Fed. Cir. 2013) (comparing dispute over the "scope of the claims" and "post-trial attempts to re-characterize improper arguments as issues of claim construction."). *See generally GPNE Corp. v. Apple Inc.*, 830 F.3d 1365, 1373 (Fed. Cir. 2016) ("At bottom, then, GPNE's complaint rests not with the district court's failure to define claim scope, but with its allowing Apple to make certain arguments to the jury.").

The district court declined to decide the question of infringement by way of claim construction. The court stated that "the Court is not persuaded that it should limit the independent claims to Defendants' 'catch and release' construction given the intrinsic evidence," Dist. Ct. Op at *8, and allowed the question of infringement to be presented to the jury. I do not discern reversible error in this procedure. *See, e.g., Verizon Servs. Corp. v. Cox Fibernet Virginia, Inc.*, 602 F.3d 1325, 1334 (Fed. Cir. 2010) ("While Verizon attempts to characterize the issue as one of claim construction, its argument is more accurately about whether Cox's arguments to the jury about the distinction between how its system works and the Internet were improper . . . .").

There was a full jury trial, with witnesses on both sides explaining the claims, and pointing out the similarities and differences between the patented system and the accused systems. Absent some error of law in the instructions to the jury, or failure of evidence such that due process is not obtained, I do not discern reversible error in

the procedure that the district court chose.  There is no reason to believe that a reasonable jury would not understand the technology and the issues.

"The difficulty presented in this appeal is how to separate the role of the jury to find facts . . . from the role of trial judges in reaching, or for us freely reviewing, the ultimate legal conclusion . . ." *McGinley v. Franklin Sports, Inc.*, 262 F.3d 1339, 1359 (Fed. Cir. 2001) (Michel, J., dissenting) (observing this "difficulty" in the obviousness context).  When such "difficulty" arises, the nature and complexity of the particular technology may be relevant, as well as the issues of fact, and application of law to fact, that require resolution.

When the district court has reasonably adopted trial procedures that accord with the principles of due process and the role of the jury, appropriate deference is warranted. *Newell Companies, Inc. v. Kenney Mfg. Co.*, 864 F.2d 757, 765 (Fed. Cir. 1988) ("Trials must be fair, not perfect.").

## C

In cases where the question of "claim scope" is directly congruent to the ultimate question of infringement, and the claim terms do not have a disputed or complex technical meaning, it was not reversible error for the trial judge to refer the question of infringement to the jury. The jury is well suited to evaluate the disclosure and to compare the claimed technology with the accused system, including weighing the views of the dueling expert witnesses.  *See Lavender v. Kurn*, 327 U.S. 645, 653 (1946) ("[T]he appellate court's function is exhausted when the evidentiary basis [of the jury's verdict] becomes apparent, it being immaterial that the court might draw a contrary inference or feel that another conclusion is more reasonable.").

When the district court, in its measured judgment, re-
fers the question of infringement to the jury, with no
evidentiary flaws in the trial proceedings, it is not the
appellate role to require that the trial be repeated.  Con-
versely, if the majority indeed believes that on the correct
view of the claims there cannot be infringement, our
appellate role is to reverse the judgment, not remand for a
new trial.

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that, on this the 1st day of September, 2017, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notice of such filing to all registered users.

I further certify that, upon acceptance and request from the Court, the required paper copies of the foregoing will be deposited with United Parcel Service for delivery to the Clerk, UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT, 717 Madison Place, N.W., Washington, D.C., 20439.

*/s/Ralph A. Dengler*

Ralph A. Dengler
Venable LLP
1270 Avenue of the Americas
New York, NY 10020
212-503-0655 (Telephone)
212-307-5598 (Facsimile)
RADengler@Venable.com

## <u>CERTIFICATE OF COMPLIANCE</u>

Counsel for Plaintiff-Appellee NobelBiz, Inc. here certifies that:

1.     The brief complies with the type-volume limitations of Federal Rule of Appellate Procedure 40(b) because exclusive of the exempted portions it does not exceed 15 double-spaced pages.

2.     The brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared using Microsoft Word 2013 in a proportionally spaced typeface: Times New Roman, font size 14 point.

*/s/Ralph A. Dengler*

Ralph A. Dengler
Venable LLP
1270 Avenue of the Americas
New York, NY 10020
212-503-0655 (Telephone)
212-307-5598 (Facsimile)
RADengler@Venable.com

September 1, 2017